Next case, case number 12-3795, Nissan North America, all in its infinity division, v. State of Illinois Motor Vehicle Review Board. Good morning. With the attorneys, we're going to make a presentation. Approach the podium, identify yourselves and the party you represent. Good morning. I'm James McGrath. I'll be arguing on behalf of Nissan North America. Good morning. Ira Levin on behalf of the Fields Dealerships. Good morning. Assistant Attorney General Ann Mascaleras on behalf of the Motor Vehicle Review Board and its chair. All right. Well, we have allotted 30 minutes, 15 minutes for each side, and you two have divided your time. Mr. Levin will proceed first, and I will follow him, and we will divide our time equally. All right. Thank you. And may I reserve two minutes, Your Honor, for rebuttal? Yes. Thank you. May it please the Court, the Illinois Motor Vehicle Franchise Act represents a comprehensive statutory scheme that regulates many aspects of the relationship between motor vehicle dealers and manufacturers. The detail and scope of that act reflects that when the legislature wanted to address a particular issue, it did so explicitly. Section 6 of the act regulates the relationship between dealers and manufacturers as it relates to warranty reimbursement. The question presented today is whether Section 6 overrides Nissan's contractual right to raise the prices of the vehicles it sells to Illinois dealers in order to recoup the increased costs it incurs in Illinois. And this case turns on what the language of that act says, or more importantly, what it doesn't say. And in answering the question, I submit to the Court that it should consider three core rules of statutory construction. First, that the plain language of the statute controls and the act should be interpreted as written. Second, that where the statute is silent on a particular issue, that silence is presumed to be intentional. And finally, in considering this issue, the Court can look to the decisions from other states construing similar statutes in order to answer the question that's presented. If these rules are applied, there's no basis to conclude that Section 6 precludes cost recovery in Illinois. And that's no accident. Section 6 has gotten a lot of attention from the legislature. Over the 10-year period from 2000 to 2010, that section in particular was amended five different times. And those amendments occurred against the backdrop of cases in Illinois and elsewhere that reinforced the notion that where legislatures wanted to regulate the relationship in the area of warranty reimbursement, they must speak explicitly. The genesis of Section 6B in particular, I think, is illustrative of the point we're trying to make. You know, one thing I'm looking at when I first looked at this case is if you didn't want to go through Section 6, why didn't you just raise the wholesale price to compensate you? Well, Nissan, if I understand the question correctly, Your Honor, Nissan was transparent in what it did. It did raise the wholesale price and did it by putting a separate line item on the invoice. That doesn't deal with the dealers. Pardon me, Your Honor? It doesn't fit into the price of the car. Well, it's on the invoice price that the dealers pay for the vehicle when they purchase it. Right, so the dealers end up paying it. Well, not necessarily. As the other courts that have considered this issue have concluded, the dealers have the ability, particularly because it's transparent on the invoice, to pass that on to the customer. You're talking about Maine and New Jersey, which basically Maine has changed its posture by limiting it, and Illinois has 6B, 6G, and 6G41. And you're obviously going to now argue that you read them distinct, and I feel that you got under statutory construction, which you started off with. I think you have to read them together. So tell me why I'm wrong. And I don't disagree, Your Honor, that you have to read the entire statute together. But I think Maine's a good example. Where they specifically wanted to prohibit cost recovery after the initial decisions upheld that practice, the Maine legislature included a single sentence to accomplish that goal in the statute, and the First Circuit upheld that statutory prohibition on cost recovery. If Illinois had wanted to do the same thing, it could easily have done so. But even reading Section 6B and 6G together, I don't think that's a fair interpretation of the statute. Section 6G addresses a particular option that was made available as a result of a compromise between some manufacturers and the dealer association. Which both General Motors and Ford accepted. They were proponents of that compromise, Ford in particular, because I think it wanted to avoid the litigation it had experienced elsewhere. But interestingly, if you look at the General Motors agreement that the dealers have included in the record, that agreement makes clear that in General Motors' view, that if there was no Section 6G agreement, that there could be cost recovery. Which is exactly the position that we're advocating here. Section 6G simply provides an option for the dealers and the manufacturers to enter into a uniform warranty reimbursement agreement. When you accept that you still have that option as to all the other dealers. Correct. And it says if you are successful in entering into such an agreement, then you may only cost recover from the non-participating dealers. Which is an exception to the case law that says you can't just target those dealers that are insisting on their prevailing retail rate. And what 6G does is it tries to provide some economic incentives to both sides to consider such an agreement. For instance, the manufacturers will have to pay a lower reimbursement rate, but they'll have to forego cost recovery against the majority of the dealers. But they'll also enjoy lower vehicle prices in Illinois, which they like because higher vehicle prices obviously could curtail demand. On the other side, the dealers have to accept a lower reimbursement rate, but they can avoid cost recovery by entering into a 6G agreement. If you accept the dealer's interpretation of the statute, they'd have no incentive to ever consider a 6G agreement because they could insist on their higher prevailing rate, but also avoid cost recovery. So they'd have no reason to consider a 6G agreement. Justice here said you can solve that problem by just putting on the next new car you ship out, you put that cost bill in. But I think that's what, if I understand it, that's what Nissan had done. No, I'm saying in the price list. In the wholesale price rather than as a separate item. Oh, I see. Well, you know, the courts have considered that issue. And originally in the Acadia case, the dealers were, and the lower court, was unhappy that the manufacturer in that case didn't list it separately. And they wanted it listed separately on the Monroney sticker. And the First Circuit said, no, where there's no requirement in the statute to do that, we're not going to read that limitation in. Here we've got the opposite. The dealers are now complaining that it's not a separate line item. But again, the statutory interpretation rules are the same. If there's no limitation on the statute that precludes cost recovery, there's no limitation about how you go about accomplishing that. The dealers still get the benefit of the legislative purpose of the statute through the position that we advocate. The concern here was that dealers were required under their dealer agreements to perform warranty repairs. They had no choice to turn those customers away. And they had to perform those repairs at set reimbursement rates. So the legislature addressed that issue. And what it said was, we're going to require you to pay prevailing retail rates. And there's no dispute that that's being done by Nissan, Illinois now. As part of a separate and distinct transaction that may occur months later, Nissan has sought to recoup those costs through the wholesale price of the vehicles. Now, it's not unusual for a manufacturer to try to recoup costs. If Illinois passed some environmental regulation that required Nissan and other manufacturers to modify their vehicles in order to comply with certain environmental standards, they'd be entitled to increase the price of the vehicles in Illinois to recover those costs. Is the wholesale price uniform throughout the country for a vehicle, a particular vehicle? In other words, is the wholesale price in Wisconsin the same as in Illinois? It typically is, Your Honor, unless, except in those states where manufacturers have imposed these kind of state-specific price increases to recoup costs, unless the state, like Maine, happens to prohibit that. I think the genesis of 6B is helpful, I think, in illustrating this point. Originally, 6B was added in 1983 and required retail reimbursement only for labor and service. In 1994, a dealer sued and said, I want reimbursement for parts as well at retail. And the Seventh Circuit said, that's not what the statute says. And if the legislature had intended the statute to cover parts, it could have very easily said so as five other states had done at the time. And the court refused to extend the statute based on its purpose or intent. And the legislature listened and responded. And in 2000, amended Section 6B to include parts. And that's the same statutory analysis that we're advocating here. If the Illinois legislature had wanted to bar recoupment, it could have easily said so. And it's not an oversight. It's amended the statute against a landscape of decisions that have required that type of explicit language. And where there isn't any, the court should resist the effort to read one into the statute. Nissan, in this case, has tried to act in accordance with the plain language of the statute and the laws that's evolved throughout the country. And these warranty reimbursement statutes, as you've probably gathered from the briefs, are very common. So there's sort of a landscape against which the parties have operated. And it's unfair. We suggest it would be unfair given that backdrop to hold Nissan liable in this case where there really wasn't clear notice or a clear mandate from the legislature that cost recovery was prohibited. If that's something that needs to be addressed going forward, the legislature can fill in that void. Section 6G, to address your concern, Your Honor, is clear in a couple of respects about why it doesn't prohibit cost recovery in the absence of an agreement. First, Section 6G.4 says, in the absence of a uniform agreement, it shall have no effect whatsoever. So because there's no agreement in this case, Section 6G shouldn't prohibit cost recovery. That's if you read them separately. I mean, when I look at their brief, their brief says, statutory construction says, you read them all together. And 6G only, with the 4, only applies in certain circumstances. And that's where you've already acted and accepted 6G. But even putting aside the no effect whatsoever language, if you look at the provision that says, what they're arguing is you can only cost recover if you have a uniform agreement. But that's not what the language says. What the language says is, if you have a uniform agreement, you're allowed to cost recover in this manner, which is just targeting the non-participating dealers, which is an exception to the rule that was laid out in the first Liberty Lincoln case. So it doesn't say what they advocate, which is you can only cost recover if you reach a uniform warranty reimbursement agreement. And we're reading 6B and 6G together, as I think we should. But given that, if 6G has no effect whatsoever, if there's no uniform agreement, you're left with 6B, and there's nothing in the language there that affects the wholesale prices or restricts Nissan's ability to adjust the wholesale prices to recoup its costs. We're not going to limit you, so go ahead. Okay. If we're asking questions, you're free to keep going, as long as you don't spend four hours. I won't do that. Let me just wrap up with this point. I think my point about putting manufacturers on clear notice of what is required is illustrated by the fact that you have so many different approaches in the decisions below and in the arguments being made by the other side. And that's why clear language is really required. The Motor Vehicle Review Board reached the conclusion that cost recovery was prohibited because it violated the spirit and principle of the law. Now, that's essentially a concession that the plain language doesn't say that cost recovery is prohibited. The Circuit Court took a different approach to reaching essentially the same conclusion. The Circuit Court concluded that 6G represented a legislative clarification and reflected that the legislature, in fact, intended in enacting 6B to preclude cost recovery. But that doesn't satisfy, number one, the requirements of a legislative clarifying amendment. But, number two, if that was really the intent of the legislature, why didn't they just include in 6B a prohibition on cost recovery unless you complied with the requirements of 6G? That's how the statute would work together. That's exactly what Georgia has done. Georgia has the equivalent of 6B and 6G, except the legislature there has included the equivalent of 6B, an express cost recovery ban. If there's a concern that there's a void in the statute, just as the Court did in the Cronin case, the Seventh Circuit case, the message can be sent to the legislature to address that concern through clear language. If there's no further questions, we're finished. Thank you. May it please the Court, Counsel. When 6G was enacted and when it was on the floor of the House, the language, the comment that was made at the time it was introduced was, Senate Bill 113 permits the manufacturer to reach an agreement with its dealers to pay a uniform warranty reimbursement rate instead of the retail rate. That is exactly reflective of the only way that this Act is reasonably read as a whole and constructed. You have two options as a manufacturer, and every manufacturer in this state has followed this law except Nissan. One, you either go to your dealers and you make a deal with 50% or more of them, and those who don't sign get a surcharge if they want to charge the full retail rate, or otherwise you pay the retail rate. Those are the two options under this statute. That's the only way it can reasonably read. That's the way the Board read it. That's the way the Circuit Court read it. Counsel asked the questions, well, why would dealers ever agree to that if they could get their full retail rate? Well, they have agreed to it, and the reason they've agreed to it is a function of how the auto industry works. Dealers have tradeoffs with their manufacturers. They always have a team approach, typically, to be a partner with their manufacturers. There are allocation issues, new franchise opportunities, all sorts of things, a laundry list of why there is negotiation and a partnership with the factory itself. And this compromise was specifically put into place to plug the loophole that Maine and New Jersey talked about in their cases. Maine and New Jersey statutes don't have a 6G. It doesn't exist in their statutes, so you're really talking about comparing fruits and vegetables, as far as I'm concerned. The only other statute that approached this, which counsel talked about, was Georgia, which had additional language in it, which I only see as belt and suspenders. The Georgia statute hasn't been tested in any way, but the statutes that they rely on, which they suggest our legislature acquiesced when they passed 6G, is not an argument that has any logic to it based on what happened. You've got the Maine case and the New Jersey case, and what followed was a negotiation between the factory, Ford and General Motors leading that pack, and the Illinois Auto Dealers Association. And what they did was they put in a specific provision dealing specifically with costs that they would like to lower in connection with reimbursing their dealers on parts used in warranty repairs. And that was the compromise that came in. So the suggestion that this statute doesn't address or restrict cost is belied by the language of 6G itself. It specifically says, if you want to recover your costs, some of your costs, manufacturer, this is what you have to do. And this is, in fact, what the manufacturers have done, except for Nissan. That has been the process since 2001 when this section of the Act was brought into play. Now, the other side of the coin is Nissan suggests to you, to this Court, that they still have the unfettered right to take away or reduce their costs by simply surcharging them, and that this 6G is only an option. Well, judges, if it was only an option, well, then why would they ever take it? Why would they ever enter into an agreement to reduce costs with their dealers on some level if they could simply turn around and surcharge their dealers and reduce the costs any way they would want to? It doesn't have any logic to it whatsoever. What the legislature said and what the Board and the Circuit Court agreed was, you look at this statute. 6G can't be meaningless. It's there for a reason. And that was the compromise piece of legislation that created this mechanism by which the dealers and manufacturers have, in fact, proceeded down. Your Honor, I have really nothing more than that. I think statutory construction is the main issue. There were some constitutional issues raised that were rejected by the Circuit Court. I don't see any, unless you have some questions on those, I'm certainly happy to answer them. But that is the sum and substance of our argument. Thank you. Good morning, and may it please the Court, Assistant Attorney General Ann Mascaleras for the Motor Vehicle Review Board and its Chair. All of Nissan's arguments, statutory, construction, and constitutional, are based on the same faulty premise, that the Board read a cost recovery bar into the Act. But that's inaccurate. To me, this case can be summed up as follows. Nissan had a statutory mechanism of cost recovery available to it. It did not use it. It unilaterally implemented a cost recovery scheme not allowed by the Act. And the Board correctly concluded that Nissan violated the Act. The Board could not disregard or read out Section 6G of the Act. And its construction of Section 6 comports with its plain language as it is written. If Nissan is unhappy with the requirements of Section 6, and its arguments of fairness and equity, and the effect that Section 6 has on it as a manufacturer, then it should advocate to have the Legislature rewrite that provision. The plain language of Section 6, as your Honors have alluded to, read as a whole, bars Nissan's warranty charge as a method of cost recovery. This isn't Section 6G, is not an alternative way to seek cost recovery, as Nissan suggests. Section 6G conditions cost recovery by providing for one and only one mechanism of cost recovery. And implicit in 6G's delineation of the available mechanism of cost recovery is its exclusion of all other mechanisms of cost recovery, including Nissan's warranty charge here. Enumerating one thing in a statute implies the exclusion of all others is the law. 6G does not expressly prohibit the cost recovery scheme employed by Nissan, but it need not because it enumerates the one method available and thus implies the exclusion of all others. To address Nissan's point, no statutory language like the Sister States Statutes Nissan cites that a manufacturer, quote, may not or shall not, quote, otherwise recover its costs is not required. It would be superfluous here because enumerating the one mechanism automatically excludes all others. Nissan's construction of the language in 6G-4 is unsupported by the statutory language as a whole and would render 6G and 6B meaningless. 6G-4 again provides that if a manufacturer and a majority of its dealers do not enter into an agreement pursuant to Section 6G-1, then, quote, this subsection G shall have no effect whatsoever, end quote. The no effect language cannot mean that in the absence of an agreement under 6G-1 that a manufacturer has the right to seek cost recovery by any method it so chooses, as Nissan claims and Nissan did here, that 6G is only an alternative way for manufacturers to recoup costs. The language must mean that absent such a 6G-1 agreement, that the duties imposed on a manufacturer listed in 6G-3 and 6G-3.1, when there is an agreement, do not apply. Correct, the statute must be evaluated as a whole. The consequences of Nissan's construction is that there would be no incentive for a manufacturer to ever enter into a 6G-1 agreement. There would be no need, but that cannot be. As the Board pointed out in its order, Section 6G was made a part of Section 6 for a reason. It would also render, Nissan's construction of this provision would also render meaningless 6B because then it would not really be reimbursing the dealers at their established retail rates, as the Board explained in its order here. Parties have addressed the Acadia and Liberty Lincoln line of cases, which just to emphasize, of course, those statutes did not have a 6G provision as Illinois statutes do. And I would just like to note as well that Illinois does not have a recoupment bar as Maine implemented after the Acadia decisions. There is no cost recovery bar, but it does condition cost recovery on the mechanism specifically provided for in 6G. I will rest on my briefs if the Court has no questions on the retroactivity analysis and the constitutional arguments and ask that the Court affirm the Circuit Court, which affirmed the Board's final administrative decision. Thank you. Just very briefly, Your Honors. First of all, the only evidence in the record with respect to 6G agreements is that three other manufacturers have entered into 6G agreements. And obviously there's over a dozen, maybe 20 different manufacturers operating in Illinois. And I think those agreements that the dealers put in the record are interesting because they show that, for instance, BMW is paying 41% versus its national rate of 40%, and General Motors is paying 45% versus its national rate of 40%. And the reason those rates are fairly close to the national reimbursement rates is because those manufacturers and the dealers that entered into those agreements were operating under the impression that in the absence of an agreement, there could be cost recovery. And that's specifically reflected in the General Motors agreement. So you're saying somebody got a bargain. Well, I think if you read the statute as precluding cost recovery in the absence of an agreement, there will be no incentive for the parties to be reasonable in entering into a 6G agreement because the dealers could insist on their much higher retail rate without ever having to fear that there would be cost recovery. The manufacturers want to avoid cost recovery because it raises the price of their vehicles and will curtail demand vis-a-vis the competition. That's why it was a compromise. And at the time that Ford and General Motors forged this compromise with the Dealer Association, the lay of the land was in the absence of any language, you could cost recover. So to accept the dealers in the state's interpretation, they were giving up a significant right and getting the ability to cost recover only the incremental cost from the minority of dealers, which is pretty significant under 6G. And I'll just leave you with a thought from the state's brief. At page 28, the state concedes that Section 6G does not expressly identify and prohibit the cost recovery method employed by Nissan here. And even reading the statute as a whole, if that was the intent of the legislature, they should have and could have addressed that explicitly. Thank you. Thank you. This case was well argued, well briefed. It will be taken under advisement and a decision will be issued in due course. Thank you.